UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN STANDLEY,

                Plaintiff,

      v.                               9:05-CV-1033
                                            (GLS/GHL)

ROBERT DENNISON, Chair; TERRENCE X.
TRACY, Counsel; VANESSA CLARKE; MARIETTA
GAILOR; SMITH, JR.; VERNON MANLEY;
PATRICIA TAPPAN; DEBRA LOOMIS; ROSLYN
BLOCK; JOHN CAPACCI; EDWARD MEVEC; and
LIVIO LAZZARI,

                Defendants.
_____

APPEARANCES:                          OF COUNSEL:

JOHN STANDLEY, 84-B-1584
  Plaintiff, *Pro Se*
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ANDREW M. CUOMO             CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable

Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

N.D.N.Y. 72.3(c).  Generally, in this *pro se* civil rights action brought under 42 U.S.C. § 1983,

New York State Inmate John Standley ("Plaintiff") alleges that twelve employees of the New

York State Division of Parole--Robert Dennison, Terrence X. Tracy, Venessa Clarke, Marietta Gailor, Walter Smith, Jr., Vernon Manley, Patricia Tappan, Debra Loomis, Roslyn Block, John Capacci, Edward Mevec, and Livio Lazzari ("Defendants")--violated Plaintiff's due process and equal protection rights under the Fourteenth Amendment by, *inter alia*, failing to consider his sentencing minutes during four separate parole hearings on July 22, 2003, July 27, 2004, January 10, 2005, and July 19, 2005.  (*See generally* Dkt. No. 4 [Plf.'s Am. Compl.].)

Currently before the Court are Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment.  (Dkt. Nos. 24, 30.)[1]  For the reasons discussed below, I recommend that Defendants' cross-motion for summary judgment be granted, and that Plaintiff's motion for summary judgment be denied as moot, procedurally deficient, and/or without merit. In the alternative, I recommend that Plaintiff's *in forma pauperis* status be revoked as having been improvidently granted due to Plaintiff's lack of candor with the Court, and that his Amended Complaint be dismissed without prejudice to refiling.

## I.  BACKGROUND

In his Amended Complaint, Plaintiff alleges as follows.  At Plaintiff's first parole hearing, on **July 22, 2003**, Defendants **Tappan**, **Clarke** and **Gailor** denied Plaintiff parole. (Dkt. No. 4, ¶ 33 [Plf.'s Am. Compl.].)  This hearing was improper in two ways: (1) Defendants **Tappan**, **Clarke** and **Gailor** should not have considered "sealed criminal information" contained in Plaintiff's pre-sentence report, and (2) Defendants **Tappan**, **Clarke** and **Gailor** failed to

---

[1]       I note that service of Plaintiff's Complaint was not effected on Patricia Tappan due to the fact that she is no longer employed by the New York State Division of Parole.  (Dkt. Nos. 18, 32.)  However, the analysis and conclusions set forth in this Report-Recommendation apply to all Defendants, including Defendant Tappan.

consider Plaintiff's "sentencing minutes," which contained "the recommendation from the sentencing judge [Judge Goodman] that plaintiff's release to parole after the completion of twenty years was entirely depend[ent] upon his record of rehabilitation," which record had been exemplary.  (*Id*. at ¶¶ 25-35, 37, 40, 89.)  On or about **February 12, 2004**, Defendant **Loomis** participated in the decision to affirm this hearing decision.  (*Id*. at ¶¶ 37, 38.)

At Plaintiff's second parole hearing, on **July 27, 2004**, Defendants **Loomis**, **Block** and **Capacci** denied Plaintiff parole.  (*Id*. at ¶¶ 41, 47.)  This hearing was improper in five ways: (1) Defendant **Loomis** should not have participated in the hearing since, on June 18, 2004, the New York State Supreme Court, Albany County, had ruled that the hearing must be a *de novo* hearing before members of the New York State Division of Parole other than the members who decided the prior parole proceeding; (2) Defendant **Loomis** should not have participated in the hearing since "her statutory right to act as a parole commissioner expired on June 18, 2004"; (3) Defendants **Loomis**, **Block** and **Capacci** should have reviewed Plaintiff's sentencing minutes and the recommendation of Judge Goodman before they conducted the hearing, as ordered by the New York State Supreme Court, Albany County, on June 18, 2004; (4) instead, Defendants **Loomis**, **Block** and **Capacci** based their decision on "their own personal opinions as to the appropriate penalty" to impose on Plaintiff, and not on any evidence; and (5) Defendant **Tracy** should have ensured that Defendants Loomis, Block and Capacci reviewed those documents before they conducted the hearing, since Plaintiff had, before the hearing, written to Defendant Tracy expressing concern that those three Defendants would not review the documents.  (*Id*. at ¶¶ 17-19, 36, 38-48, 51, 90, 95.)  Subsequently, this hearing was affirmed by a panel that included Defendants **Gailor** and **Loomis** improperly (since Defendant Gailor had participated in

the first hearing and Defendant Loomis had participated in deciding the appeal from the first hearing).  (*Id*. at ¶¶ 68-69, 86.)  Furthermore, at some point after **October 27, 2004**, Defendant **Tracy** failed to remedy these errors after being notified of them by Plaintiff.  (*Id*. at ¶ 52.)

At Plaintiff's third parole hearing, on **January 18, 2005**, Defendants **Mevec**, **Manley** and **Smith** denied Plaintiff parole.  (*Id*. at ¶¶ 59, 62.)  This hearing was improper in three ways: (1) it was ordered without Plaintiff having been previously provided a written decision expressing the findings reached at the previous parole hearing or the findings reached by the appeals unit that had ordered the new hearing; (2) Defendants **Mevec**, **Manley** and **Smith** should have reviewed Plaintiff's sentencing minutes and the recommendation of Judge Goodman before they conducted the hearing; and (3) Defendant **Tracy** should have ensured that Defendants Mevec, Manley and Smith reviewed those documents before they conducted the hearing, since Plaintiff had, before the hearing, written to Defendant Tracy expressing concern that those three Defendants would not review the documents.  (*Id*. at ¶¶ 54, 57-64, 66-67, 91, 95.)  Furthermore, at some point after **February 5, 2005**, Defendant **Tracy** failed to remedy these errors after being notified of them by Plaintiff.  (*Id*. at ¶ 70.)  In addition, at some point, Defendant **Tracy** failed to provide Plaintiff with "written reasons as to why he was granted a <u>second</u> *de novo* hearing," as requested by Plaintiff.  (*Id*. at ¶ 72.)

At Plaintiff's fourth parole hearing, on **July 19, 2005**, Defendants **Lazzari**, **Manley** and **Capacci** denied Plaintiff parole.  (*Id*. at ¶¶ 73, 84.)  This hearing was improper in four ways: (1) Defendants **Lazzari**, **Manley** and **Capacci** should have reviewed Plaintiff's sentencing minutes and the recommendation of Judge Goodman before they conducted the hearing; (2) Defendants **Lazzari**, **Manley** and **Capacci**  "coerced" Plaintiff into agreeing to proceed with the hearing

without the benefit of his sentencing minutes, by threatening to otherwise postpone the hearing for three months, and by misrepresenting to Plaintiff that it was his burden to provide such minutes to the Division of Parole; (3) Defendant **Lazzari** considered "sealed criminal information" contained in Plaintiff's pre-sentence report, despite the June 18, 2004, order of the New York State Supreme Court, Albany County, to not consider such information, and to "black-out" such information; and (4) Defendant **Capacci** deprived Plaintiff of his right "to be heard on the record" by "cut[ting] him off in mid sentence[] and in a hostile manner" when Plaintiff was attempting to respond to Defendant Capacci's question, "[W]hy did you decide to stab and kill [your victim]?"  (*Id*. at ¶¶ 73-84, 92-94.)

Finally, Plaintiff alleges that Defendant **Dennison** is liable by failing "to ensure that plaintiff [was] accorded a proper Parole Board hearing by guaranteeing that the sentencing minutes would be submitted for review and consideration by the defendants prior to any parole determination," and failing to "ensure that the enumerated provisions of Criminal Procedure Law § 160.50 and Executive Law § 296 (16), and the previous court's Memorandum and Judgment, [were] complied with by the removal of all statutorily sealed criminal information from plaintiff's parole file . . . ."  (*Id*. at ¶ 95 [emphasis removed].)

## II.    APPLICABLE LEGAL STANDARD

### A.    Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining

whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[3]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[4] The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[5] "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

When deciding a motion for summary judgment, the facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[7] and are not specifically controverted by the non-movant.[8] Once a

---

[2]        A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

[3]        *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[4]        *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[5]        *Matsushita,* 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[6]        *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

[7]        *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be

movant has filed a Rule 7.1 Statement, the opposing party must file a Rule 7.1 Response.[9]  This

Rule 7.1 Response "shall mirror the movant's [Rule 7.1 Statement] by admitting and/or denying

each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a

specific citation to the record where the factual issue arises."[10]  A district court has no duty to

perform an independent review of the record to find proof of a factual dispute.[11]  In the event the

district court chooses to conduct such an independent review of the record, any verified

complaint filed by the plaintiff should be treated as an affidavit.[12]  (Here, I note that Plaintiff's

---

satisfied that the citation to evidence in the record supports the assertion.") [citation omitted];
*see, e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.)
("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local
Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the
defendants' 7.1 statement.") [emphasis added].

[8]        *See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material
Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>").

[9]        *See* N.D.N.Y. L.R. 7.1(a)(3).

[10]        (*Id.*)

[11]        *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)
("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an
obligation on a district court to perform an independent review of the record to find proof of a
factual dispute.") [citations omitted]; *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App.
LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-
13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v.
Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy,
J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295
(N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v.
Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[12]        *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A]
verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary
judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff
"was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert.
denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified

Amended Complaint is verified.)

However, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge."[13]  An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[14]  In addition, such an affidavit (or verified complaint) must not be conclusory.[15]  An affidavit (or verified complaint) is conclusory if, for example, its assertions

---

complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[13]    Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[14]    *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[15]    *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

lack any supporting evidence or are too general.[16]  Moreover, "[a]n affidavit must not present

legal arguments."[17]

Finally, even where an affidavit (or verified complaint) is based on personal knowledge

and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely

unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and

improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to

credit the allegations made in the complaint."[18]

---

[16]        *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute
between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759
F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about
Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was
conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S.
829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]
with the characters and plot line for a novel of intrigue rather than the concrete particulars which
would entitle him to a trial.").

[17]        N.D.N.Y. L.R. 7.1(a)(2).

[18]        *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005)
(affirming grant of summary judgment to defendants in part because plaintiff's testimony about
an alleged assault by police officers was "largely unsubstantiated by any other direct evidence"
and was "so replete with inconsistencies and improbabilities that no reasonable juror would
undertake the suspension of disbelief necessary to credit the allegations made in the complaint")
[citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45
(2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs'
deposition testimony regarding an alleged defect in a camera product line was, although specific,
"unsupported by documentary or other concrete evidence" and thus "simply not enough to create
a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,
2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified
complaint, which recounted specific statements by defendants that they were violating his rights,
was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact

**B.       Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

To the extent that a defendant's motion for summary judgment under Rule 56 of the

Federal Rules of Civil Procedure is based entirely on the complaint, such a motion is functionally

the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  As a result,

"[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion

for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-

274 (2d Cir. 1968) [citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y.

1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule

12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

To prevail on a motion to dismiss for "failure to state a claim upon which relief can be

granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendant must show

"beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would

entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) [citations omitted].[19]  A

defendant may base this motion on either or both of two grounds: (1) a challenge to the

---

with regard to all but one of prisoner's claims, although verified complaint was sufficient to
create issue of fact with regard to prisoner's claim of retaliation against one defendant because
retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose
testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia
Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was
insufficient evidence to oppose defendants' motion for summary judgment where that testimony
recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as
precedential authority but merely to show the case's subsequent history, in accordance with
Second Circuit's application of its Local Rule § 0.23).  *See*, *infra*, note 24 of this Report-
Recommendation.

[19]       *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may
dismiss a complaint only if it is clear that no relief could be granted under any set of facts that
could be proved consistent with the allegations.") [internal quotations and citation omitted].

"sufficiency of the pleading" under Rule 8(a)(2);[20] or (2) a challenge to the legal cognizability of the claim.[21]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[22] it does require the

---

[20]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[21]     *See Swierkiewicz*, 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[22]     *See Swierkiewicz*, 534 U.S. at 511-512, 515.

pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47).[23]   The purpose of this rule is to "facilitate a proper decision on the merits."   *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).   A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).[24]

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as

---

[23]      *See also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[24]      Consistent with the Second Circuit's application of its Local Rule § 0.23, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]); *U.S. v. Casado*, 303 F.3d 440, 449 n.5 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *U.S. v. Terry*, 927 F.2d 593 [2d Cir. 1991]); *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 114 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *Zitz v. Pereira*, 225 F.3d 646 [2d Cir. 2000]); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 57 (2d Cir. 2001) (citing, for similar purpose, unpublished table opinion of *Herman Miller, Inc. v. Worth Capitol*, 173 F.3d 844 [2d Cir. 1999]); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000) (citing, for similar purpose, unpublished table opinion of *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 895 F.2d 1410 [2d Cir. 1989]); *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 586 (2d Cir. 2000) (citing, for similar purpose, unpublished table opinion of *Planned Parenthood Fed'n of Am. v. Bucci*, 152 F.3d 920 [2d Cir. 1998]).  Moreover, I cite *Gonzales* to show a "a well-reasoned district court disposition of a similar case," as did the Second Circuit with regard to another case in a similar circumstance in *Carvey v. LeFevre*, 611 F.2d 19, 22 & n.2 (2d Cir. 1979).

"simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement.  *See Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").  However, even this liberal notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g.*, *Dura Pharm.*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).[25]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted].  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."

---

[25]      Several other decisions exist from the Second Circuit affirming the Rule 12(b)(6) dismissal of a complaint due to its insufficiency under Rule 8(a)(2) after *Swierkiewicz*.  *See, e.g.*, *Johnson v. U.S.*, No. 03-6054, 2003 WL 22849896, at *1 (2d Cir. Dec. 2, 2003) (relying on pre-*Swierkiewicz* decision by the Second Circuit applying Rule 8[a] and Rule 12[b][6]); *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Second Circuit Local Rule § 0.23, I cite them because they clearly acknowledge the continued precedential effect, after *Swierkiewicz*, of cases from within the Second Circuit interpreting Rules 12(b)(6) and 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

*Hernandez*, 18 F.3d at 136 [citation omitted].[26]  Indeed, "courts must construe *pro se* pleadings

broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*,

202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process

violation were insufficient) (internal quotation and citation omitted).[27]

Finally, when addressing a *pro se* complaint, a district court "should not dismiss without

granting leave to amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)

(internal quotation and citation omitted).[28]  Of course, an opportunity to replead should be denied

where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading

will not cure it." *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation

omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of

course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint

should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)

[citation omitted].  Moreover, granting a *pro se* plaintiff an opportunity to amend his complaint is

not required where the plaintiff has already been given an opportunity to amend his complaint

(and has taken advantage of that opportunity).

---

[26]    *See also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (affirming dismissal under Rule 12[b][6]) [internal quotations and citation omitted].

[27]    Of course, the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) [citations omitted], *accord*, *Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[28]    *See also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

**C.      Revocation of Plaintiff's Special Status as *Pro Se* Civil Rights Litigant**

Imposed over the aforementioned burden-shifting framework is the generous perspective with which the Court *generally* views a *pro se* civil rights plaintiff's papers.[29]  For example, where a civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion, *generally* the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest.[30]  Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment."[31]

In addition, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or status that is normally afforded *pro se* litigants.[32]   The rationale for this revocation

_____

[29]      *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460,  467 (S.D.N.Y. 1998) (*pro se* civil rights action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished decision).

[30]      *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

[31]      *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v. Selsky*, 251 F. Supp. 2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, 91-CV-5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

[32]      *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted].

of special status (at least in the Second Circuit) is not that the *pro se* litigant should be punished but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason for conferring the special status upon *pro se* litigants in the first place.[33]  Moreover, permitting experienced *pro se* litigants to retain their special status (despite their litigation experience) would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.[34]

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status

_____

[33]     *See*, *e.g.*, *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, M.J., adopting Report-Recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

[34]     *See*, *e.g.*, *Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); *see also* Jessica Case, "Pro se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev.* 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro se* litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

look at a variety of factors in assessing whether or not the *pro se* litigant is experienced.  Most

often, these factors include (1) the number of previous federal court actions filed, (2) the number

of previous federal court appeals filed, (3) the number of previous state court actions filed, (4)

the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions

and/or appeals.[35]

There is, of course, no formula for determining "How many is too many?"  However,

*generally*, if a *pro se* litigant has filed a dozen or more actions and/or appeals before the date of

the decision in question, it is quite possible that he will be deemed to be "experienced."[36]

Granted, there are some cases revoking the special status of a *pro se* litigant who has filed *fewer*

than a dozen cases.[37]  However, there appear to be *more* cases refusing to revoke the special

---

[35]    *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143; *Gummerson*, 201 F.3d at *2; *Flynn*, 32 F.3d at 31; *Frawley*, 2006 WL 1742738, at *3 & n.2; *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10; *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3; *Dean*, 204 F.R.D. at 257; *Santiago*, 91 F. Supp. 2d at 670; *McGann*, 1999 WL 173596, at *2, 8-10; *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3; *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1.

[36]    *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had ***twelve*** simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had ***twelve*** simultaneously pending lawsuits in Northern District alone); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed ***twenty*** lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed ***twenty*** lawsuits in Northern District alone).

[37]    *See, e.g.*, *Santiago*, 91 F. Supp. 2d at 670 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had ***ten*** lawsuits pending in Southern District); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (denying leniency to *pro se* civil rights inmate who had previously filed ***eight*** federal court actions or appeals); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that inmate had filed ***seven*** previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (denying leniency to *pro se* civil rights inmate based on fact that

status of a *pro se* litigant who has filed fewer than a dozen cases.[38]

One reason for this array of cases is that, in determining whether or not a *pro se* litigant is "experienced," courts sometimes consider additional factors, such as the quality of the *pro se* litigant's submissions to the Court (e.g., whether they are typed, cogent, supported by applicable affidavits, exhibits, and/or memoranda of law, etc),[39] and whether or not the *pro se* litigant has been victorious (or partially victorious) in any of his previous actions or appeals.[40]

---

plaintiff had **seven** lawsuits pending in Western District).

[38]    *See, e.g.*, *McEachin v. Faruki*, 03-CV-1442, 2006 WL 721570, at *2 n.3 (N.D.N.Y. March 20, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eleven** other federal lawsuits since 2000); *Pritchett v. Portuondo*, 03-CV-0378, 2005 WL 2179398, at *2 n.3 (N.D.N.Y. Sept. 9, 2005) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eight** other federal lawsuits since 1996); *Burke v. Seitz*, 01-CV-1396, 2006 WL 383513, at *2 n.5 (N.D.N.Y. Feb. 13, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **six** other federal lawsuits in previous nine years); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *3 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (refusing to deny leniency to *pro se* civil rights inmate who had previously filed **five** actions or appeals in federal or state court); *Smith*, 2006 WL 2805242, at *3 & n.4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of **five** other lawsuits); *Abbas v. Senkowski*, 03-CV-0476, 2005 WL 2179426, at *2 n.4 (N.D.N.Y. Sept. 9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** other federal actions since 1997); *Loren v. Feerick*, 97-CV-3975, 1997 WL 441939, at *1 & n.9 (S.D.N.Y. Aug. 6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

[39]    *See, e.g.*, *Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that, among other things, "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc.").

[40]    *See, e.g., Saudners*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had settled two of his previous six federal court actions, receiving $25,000 in exchange for his agreement to voluntarily dismiss the actions, and the fact that some of plaintiff's motions in his many actions have been

Here, Plaintiff has filed at least **sixteen** federal or state court actions or appeals other than the current action. Specifically, he has filed at least **five** other federal court actions,[41] at least **one** federal court appeal,[42] at least **seven** state court actions,[43] and at least **three** state court appeals.[44] Plaintiff was victorious or partially victorious in at least **four** of these actions or appeals.[45] This

---

granted); *Ab v. Sekendur*, 03-CV-4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004) (considering, during decision of whether *pro se* plaintiff should be denied leniency normally afforded inexperienced *pro se* litigants, fact that "[plaintiff's] has successfully applied for and received . . . [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

[41]     *See Standley v. Lazerson*, 91-CV-6078 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Artuz*, 93-CV-3528 (E.D.N.Y.) (habeas corpus action); *Standley v. Stewart*, 97-CV-6552 (S.D.N.Y.) (civil rights action); *Standley v. Lyder*, 99-CV-4711 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Wilcox*, 02-CV-6230 (S.D.N.Y.) (prisoner civil rights action).

[42]     *See Standley v. Artuz*, No. 95-2755 (2d Cir.) (habeas corpus action).

[43]     *See Standley v. Stewart*, Index No. 402210/1999 (N.Y.S. Sup. Ct., New York County) (professional malpractice action); *Standley v. Goord*, Index No. 002763/2000 (N.Y.S. Sup. Ct., Dutchess County) (Article 78 proceeding); *Standley v. Goord*, Index No. 000120/2001 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding); *Standley v. Parole*, Index No. 000149/2004 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding); *Standley v. Goord*, Index No. 002828/2004 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding); *Standley v. Parole*, Index No. 000971/2005 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding); *Standley v. Parole*, Index No. 001989/2006 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding).

[44]     *See Standley v. N.Y.S. Div. of Parole*, 825 N.Y.S.2d 568 (N.Y. App. Div., 3d Dept. 2006) (Article 78 proceeding); *Standley v. Stewart*, 759 N.Y.S.2d 327 (N.Y. App. Div., 3d Dept. 2003) (professional malpractice action); *Standley v. Goord*, 742 N.Y.S.2d 406 (N.Y. App. Div., 3d Dept. 2002) (Article 78 proceeding); *see also Standley v. N.Y.S. Div. of Parole*, 823 N.Y.S.2d 922 (N.Y. App. Div., 3d Dept. 2006) (Article 78 proceeding); *Standley v. N.Y.S. Div. of Parole*, 815 N.Y.S.2d 492 (N.Y. App. Div., 3d Dept. 2006) (Article 78 proceeding).

[45]     *See Standley v. N.Y.S. Div. of Parole*, 825 N.Y.S.2d 568 (N.Y. App. Div., 3d Dept. 2006) (reversing and remanding trial court decision against Plaintiff); *Standley v. N.Y.S. Div. of Parole*, 823 N.Y.S.2d 922 (N.Y. App. Div., 3d Dept. 2006) (granting Plaintiff's motion for re-argument and motion to proceed as a poor person); *Standley v. Wilcox*, 02-CV-6230, Stipulation and Order of Settlement (S.D.N.Y. filed May 13, 2004) (entering order dismissing

last fact is of little surprise to me since, generally, Plaintiff's papers in the aforementioned

actions–as well as the current action–have been exceptionally good, almost always being typed,

coherent, organized, and accompanied by affidavits, exhibits and memoranda of law, etc.

As a result, I find that the circumstances warrant revoking Plaintiff's special status as a

*pro se* litigant for the remainder of this action.  Again, continuing to afford him such special

status would be unnecessary (and unfairly prejudicial to Defendants).

## III.   ANALYSIS

### A.   Defendants' Cross-Motion for Summary Judgment

In support of their cross-motion for summary judgment, Defendants essentially assert

three arguments: (1) Plaintiff has failed to state a due process claim because (a) Plaintiff had no

"protected liberty interest" in parole in New York State, (b) a violation of New York State law

does not in and of itself give rise to a due process violation, and (c) the parole board's actions

were not sufficiently irrational and improper to give rise to a due process violation; (2) Plaintiff

has failed to state an equal protection claim because he does not allege any facts indicating, or

adduce any evidence establishing, any "discriminatory purpose or conduct"; and (3) three of

Plaintiff's six causes of action are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477

(1994).  (Dkt. No. 30, Part 8 [Defs.' Mem. of Law].)

---

action upon settlement by parties).  (*See also* Dkt. No. 4, ¶ 17-19 [Plf.'s Am. Compl., alleging
that Plaintiff's case entitled *Standley v. New York State Division of Parole*, Index No. 149-04,
which was pending in Supreme Court, Albany County, resulted in a judgment on June 18, 2003,
in Plaintiff's favor, "vacat[ing] and annull[ing] the defendants' determination to deny parole
release and order[ing] that plaintiff be brought before a *de novo* hearing"].).

### 1.    Plaintiff's Due Process Claim

This action is brought pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, as follows: "Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.[46]  Thus, the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" is an "essential element[]" of a Section 1983 claim.[47]  The term "the Constitution and laws" refers to the United States Constitution and *federal* laws.[48]  A violation of a state law or regulation, *in and of itself*, does not give rise to a violation of the United States Constitution or a federal law, for purposes of 42 U.S.C. § 1983.[49]

---

[46]    "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) [citation omitted].

[47]    *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) [emphasis added; citation omitted].

[48]    *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States*.") [emphasis added], *accord*, *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Pitchell*, 13 F.3d at 547 ("In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws *of the United States*.") [emphasis added], *accord*, *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right. . . .") [citation omitted; emphasis added].

[49]    *See Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the

Having said that, it is true that a state may, *under certain circumstances*, create a liberty interest protected by the Fourteenth Amendment's Due Process Clause through its enactment of certain statutory or regulatory measures.  At one point, the Supreme Court held that a state created such a liberty interest if it has repeatedly used, in a statute or regulation, explicit language of an "unmistakably mandatory character" (e.g., the words "shall," "will," or "must," etc.) with regard to specific procedures.  *Hewitt v. Helms*, 459 U.S. 460, 466-472 (1983).  However, that rule created a perverse incentive (1) for inmates to "comb" state regulations for mandatory language upon which to base claims of entitlements, (2) for courts to draw negative inferences from mandatory language in state regulations, and to involve themselves in the day-to-day management of prisons, and (3) for states to not codify prison management procedures, or to confer on correctional personnel "standardless discretion."  *Sandlin v. Connor*, 515 U.S. 472, 481-482 (1995).  As a result, the Supreme Court changed the rule, shifting the courts' focus from the *language* of a particular state law or regulation to the *nature of the deprivation*.  *Sandlin*, 515 U.S. at 477-484 (describing history of due process analysis in modern Supreme Court precedents).[50]

---

defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 . . . .") [citation omitted]; *Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings . . . do not rise to the level of constitutional violations.") [citation omitted]; *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") [citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)].

[50]    *See also Blouin v. Spitzer*, 356 F.3d 348, 362-363 (2d Cir. 2004) (recognizing abrogation or modification of prior rule which focused on language of state regulation), *accord*,

The practical effect of this rule change is that, in cases involving due process challenges to parole hearings, "[i]n order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have *a legitimate expectancy of release* that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) [emphasis added; citations omitted].[51]   "Neither the mere possibility of release . . . nor a statistical probability of release . . . gives rise to a legitimate expectancy of release on parole." *Barna*, 239 F.3d at 171 [citations omitted].  Moreover, the Second Circuit has repeatedly recognized that "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171.[52]  As a result, alleged violations of procedural requirements of the New

---

*Anderson v. Recore*, 317 F.3d 194, 198-200 (2d Cir. 2003), *accord*, *Watson v. City of N.Y.*, 92 F.3d 31, 37-38 (2d Cir. 1996), *accord*, *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

[51]     *See also Greenholz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7-16 (1979) (stating that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," and finding that Nebraska's parole scheme did create due process right but only because the parole scheme "mandat[ed]" that prisoners be released unless certain conditions existed), *accord*, *Board of Pardons v. Allen*, 482 U.S. 369, 373-381 (1987) (holding that Montana parole statute created "a liberty interest protected by the Due Process Clause" only because the statute specifically provided that the Parole Board "shall" release the inmate when certain findings prerequisite to release are made).

[52]     *See also Davis v. Dennison*, No. 06-2723, 2007 WL 678331, at *1 (2d Cir. March 2, 2007) (summary order, cited for "persuasive value" in accordance with the *Advisory Committee Notes* to Fed. R. App. P. 32.1[a], and cited to "acknowledge[] the continued precedential effect" of *Barna v. Travis*, 239 F.3d 161 [2d Cir. 2001] in accordance with Second Circuit Local Rule § 0.23 as applied by the Second Circuit in *Khan v. Ashcroft*, 352 F.3d 521, 525 [2d Cir. 2003]) ("New York State's parole scheme does not create a liberty interest protected by the Due Process Clause.  *See Barna v. Travis*, 239 F.3d 161, 171 (2d Cir. 2001)."); *Marvin v. Goord*, 255 F.3d 40, 44 (2d Cir. 2001) ("[T]he New York State parole scheme does not create a protectable liberty interest [under the Due Process Clause of the Fourteenth Amendment]."); *Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979) ("It is apparent that New York's parole provisions . . . do not establish a scheme whereby parole shall be ordered unless specific conditions are found to exist. . . .   While guidelines are used to structure the exercise of discretion . . . no entitlement to release is created.").

York parole scheme "are matters for consideration by the state courts." *Boothe v. Hammock*, 605 F.2d 661, 665 (2d Cir. 1979), *accord*, *Borcsok v. Pataki*, 05-CV-1542, 2006 WL 839545, at *2, n.1 (N.D.N.Y. March 29, 2006) (Sharpe, J.).

Rather, to the extent that a New York State inmate has any liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment, that interest extends only to not being denied a parole release "arbitrarily" or "capriciously," for example, based on an inappropriate consideration of a protected classification (such as race, religion, gender, economic status, etc.) or an "irrational distinction."[53]  This often-repeated recitation of the law is based on firmly established precedents from the highest court in the United States and the highest court in the State of New York.[54]

-------------------------

[53]       *See Romer v. Travis*, 03-CV-1670, 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003) ("[Plaintiff] can claim a due process violation only if the Parole Board has denied his relief 'arbitrarily or capriciously.'"); *Morel v. Thomas*, 02-CV-9622, 2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003) ("[Plaintiff's] due process rights extend only to a refusal by the Parole Board to deny release arbitrarily or capriciously, based on inappropriate consideration of a protected classification or on an irrational distinction, or on any other constitutional grounds."), *accord*, *Manley v. Thomas*, 255 F. Supp.2d 263, 266 (S.D.N.Y. 2003); *Defino v. Thomas*, 02-CV-7413, 2003 WL 40502, at *3-4 (S.D.N.Y. Jan. 2, 2003) ("[Petitioner's] only interest in parole is in not being denied parole for arbitrary or constitutionally impermissible reasons.").

[54]       *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 226 (1976) ("The touchstone of due process is protection of the individual against *arbitrary* action of government. . . .  The liberty interest protected in *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)] had its roots in state law, and the *minimum* procedures appropriated under the circumstances were held required by the Due Process Clause 'to ensure that the state-created right is not *arbitrarily* abrogated.'") [internal quotation marks and citations omitted; emphasis added]; *Silmon v. Travis*, 718 N.Y.S.2d 704, 707 (N.Y. 2000) ("Our jurisprudence . . . is well settled as to the authority of the Parole Board. Judicial intervention is warranted only when there is a showing of irrationality bordering on impropriety.") [internal quotation marks and citations omitted]; *Russo v. New York State Bd. of Parole*, 427 N.Y.S.2d 982, 986 (N.Y. 1980) ("In light of the board's expertise and the fact that responsibility for a difficult and complex function has been committed to it, there would have to be a showing of irrationality bordering on impropriety before intervention would be warranted.").

Here, Plaintiff's Amended Complaint alleges various violations of procedural requirements set forth in N.Y. Exec. Law § 259-i, most notably, the requirement that the recommendation of the sentencing court be considered during his parole hearing.  (*See*, *supra*, Part I of this Report-Recommendation.)  Defendants may or may not have violated N.Y. Exec. Law § 259-i during one or more of Plaintiff's four parole hearings.  For the sake of argument, I will assume that one or more Defendants did commit one or more such violations.[55]  The

---

[55]      I assume this fact even though it is of some uncertainty.  Section 259-i(2)(c)(A) of the New York Executive Law (the particular section that governs parole release decisions) does not always require the Parole Board, during a parole release hearing, to consider "the recommendations of the sentencing court."  Specifically, Section 259-i(2)(c)(A) provides, in pertinent part, as follows:

> Discretionary release on parole shall not be granted merely as a reward for good conduct . . . while confined but after considering if there is a reasonable probability that . . . his release . . . will not so deprecate the seriousness of his crime as to undermine respect for law.  In making the parole release decision . . . the following [shall] be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments . . . ; (iii) release plans including community resources, employment, education and training and support services available to the inmate . . . .  Notwithstanding the provisions of this section, in making the parole release decision for persons whose minimum period of imprisonment was not fixed pursuant to the provisions of subsection one of this section, in addition to the factors listed in this paragraph the board shall consider the factors listed in paragraph (a) of subdivision one of this section.

N.Y. Exec. Law § 259-i(2)(c)(A).  Rather, the only circumstance under which the Parole Board must, during a parole release hearing, consider the recommendations of the sentencing court is when the parole release hearing concerns a "person[] whose minimum period of imprisonment was ***not*** fixed pursuant to the provisions of [Section 259-i(1)]."  *Id* [emphasis added].  Specifically, Section 259-i(1)(a), provides, in pertinent part, as follows,

> In any case where a person is received in an institution . . . with an indeterminate sentence, and the court has not fixed a minimum period of imprisonment, the board shall cause to be brought before one or

problem is that, as stated above, any such violations do not, in and of themselves, give rise to a

violation of the Due Process Clause of the Fourteenth Amendment.  Rather, again, to state a due

process claim under the Fourteenth Amendment, Plaintiff needs to allege facts indicating that he

was denied parole release *arbitrarily* or *capriciously*, for example, based on an inappropriate

consideration of a *protected classification* (such as race, religion, gender, economic status, etc.)

or an *irrational distinction*.

Plaintiff does not allege facts indicating that Defendants were acting out of an

inappropriate consideration of a *protected classification*, but that, at most, they were acting, in

part, out of a consideration of Plaintiff's status as convicted murderer (which is not a

classification protected by the United States Constitution).  (*See*, *infra*, Part III.A.2. of this

Report-Recommendation.)  Moreover, Plaintiff does not allege facts indicating that Defendants

were acting *irrationally*, but that they were basing their decision too much, or perhaps solely, on

the nature and seriousness of his offense (rather than also considering the recommendation of the

---

more members . . . all information with regard to such person[] . . .
[and] shall study the same and shall personally interview the sentenced
person.  Upon conclusion of the interview, [the members] shall
determine the minimum period of imprisonment to be served prior to
parole consideration in accord with the guidelines . . . [which] shall
include (i) the seriousness of the offense with due consideration of the
type of sentence, length of sentence and recommendations of the
sentencing court, the district attorney, the attorney for the inmate, the
pre-sentence probation report as well as consideration of any
mitigating and aggravating factors . . . and (ii) prior criminal record,
including . . . adjustment to . . . institutional confinement. . . .

N.Y. Exec. Law § 259-i(1)(a).  Here, I have trouble construing Plaintiff's Amended Complaint as
alleging facts indicating that the sentencing court did *not* fix a "minimum period of
confinement."  (*See* Dkt. No. 4, ¶ 24 [Plf.'s Am. Compl., alleging that the sentencing court
"imposed an indeterminate sentence of twenty years to life"].)

sentencing judge).  (*See*, *e.g.*, Dkt. No. 4, ¶¶ 56, 57 , 70, 95 [Plf.'s Am. Compl., alleging that Defendants found Plaintiff unsuitable for parole release solely due to the seriousness of Plaintiff's offense].)  More specifically, Plaintiff alleges facts indicating that Defendants, after acknowledging some factors weighing in favor of Plaintiff's release (such as his "institutional adjustment" and "release plan"), repeatedly concluded that Plaintiff's release, at that time, would so deprecate the seriousness of his crime (i.e., which involved, during the course of an attempted robbery, Plaintiff's, without being under the influence of alcohol or drugs, fatally stabbing a man 15 times, pouring a half-gallon of cleaning solvent on his body, and then lighting him afire) as to undermine respect for the law.  (Dkt. No. 4, ¶¶ 33, 47, 62, 84 [Plf.'s Am. Compl.].)[56]  Again, while such decision-making by Defendants might violate N.Y. Exec. Law § 259-i, it is not "irrational."  Under the circumstances, Plaintiff's remedy for any violation of N.Y. Exec. Law § 259-i lies in state court.[57]

In opposition to Defendants' argument, Plaintiff places much reliance on *Graziano v.*

---

[56]    It is worth noting that Plaintiff does not even allege facts indicating that Defendants were *arbitrarily* failing to consider the (alleged) recommendation of the sentencing judge but that they were doing so for a variety of stated reasons: (1) that they did not have possession of the recommendation; (2) that they were laboring under the (allegedly) mistaken belief that they had a duty to consider the "sentencing minutes" *only* if Plaintiff could show that the "sentencing minutes" were relevant to Plaintiff's parole release; (3) that they were laboring under the (allegedly) mistaken belief that it was Plaintiff's duty to provide a copy of the recommendation; and (4) that they were laboring under the (allegedly) mistaken belief that Plaintiff could choose to waive his statutory right to require Defendants to consider such a recommendation.  (Dkt. No. 4, ¶¶ 37, 42-43, 74-79 [Plf.'s Am. Compl.].)

[57]    *See Boothe*, 605 F.2d at 665 (alleged violations of procedural requirements of New York parole scheme "are matters for consideration by the state courts"), *accord*, *Borcsok*, 2006 WL 839545, at *2, n.1 (Sharpe, J.).  (*See*, *e.g.*, Dkt. No. 39, Ex. A [attaching state court decision dated 11/30/2006, addressing Plaintiff's statutory claim and ordering new parole hearing], Ex. B [attaching Parole Board Decision regarding such hearing on 1/23/07].)

*Pataki*, in which, last July, the Southern District of New York denied a Rule 12(b)(6) motion to dismiss, *inter alia*, the due process claims asserted by a class action of prisoners alleging that the New York State Division of Parole was carrying out a policy (or agenda of then-Governor George Pataki) for eliminating parole for practically all felons serving sentences for of class "A-1" violent felony offenses such as murder, rather than considering the factors required by N.Y. Exec. Law § 259-i.  *Graziano v. Pataki*, 06-CV-0480, 2006 WL 2023082, at *6 (S.D.N.Y. July 17, 2006).  However, instrumental in reaching that decision was the Southern District's finding that the plaintiffs' complaint asserted "a claim that there is in fact a *policy* [to deny parole to A-1 violent felons], and under the *policy*, each Plaintiff's status as an A-1 violent offender predetermines the outcome of the parole decision, notwithstanding any positive factors . . . ." *Graziano*, 2006 WL 2023082, at *6 [emphasis added].  Plainly stated, the Southern District found that the plaintiffs' due process allegations stated a claim under Rule 12(b)(6) because the plaintiffs had alleged facts indicating the existence of a system-wide "policy" to make parole decisions for a certain class of offenders not on a case-by-case basis but on a basis that was "arbitrary" or "capricious" and thus in excess of the Parole Board's discretionary authority.  *Id*. at *6-8.

The same cannot be said of Plaintiff's Amended Complaint in this action.  The closest Plaintiff comes to premising his due process claim on such a "policy" is when he alleges, "[A]n argument could be made that these prejudices probably stem from a gubernatorial policy against parole for murders . . . ."  (Dkt. No. 4, ¶ 87 [Plf.'s Am. Compl.].)  However, in that same paragraph, Plaintiff makes clear that he is not in fact premising his due process claim on such a speculative "policy" but on his allegation that Defendants' treatment of him (personally) has been

so arbitrary that it violates due process.  (*Id*.)  Furthermore, elsewhere in his Amended

Complaint, Plaintiff alleges facts indicating that, during the four hearings, Defendants considered

Plaintiff's case on an individual basis.  Specifically, those allegations indicate that Defendants

considered  factors such as (1) Plaintiff's satisfactory "institutional adjustment" (i.e., the fact that

Plaintiff "complet[ed] numerous programs, receiving [his] GED, and approximately 129 credits

from Marist College . . . ." and the fact that Plaintiff has developed "commendable" artistic

skills), and (2) his "release plan" (which involved "pursuing a vocation in Buddhism at Zen

Mountain Monastery [in] Mt. Tremper, New York"), but that Defendants found that those two

factors were outweighed by (3) Plaintiff's criminal record while in prison (i.e., the fact that

"while incarcerated you have incurred two Tier III disciplinary sanctions," although he had

committed no such infractions in the previous four years), and most importantly (4) the particular

nature of his crime (i.e., the fact that, during the course of an attempted robbery, Plaintiff,

without being under the influence of alcohol or drugs, stabbed a man 15 times, poured a half-

gallon of cleaning solvent on his body, and then lighting him afire).  (*Id*. at ¶¶ 29, 33, 47, 62, 84.)

Indeed, setting aside the way Defendants explicitly weighed the above-stated factors, I

find that this last factual allegation (i.e., that Defendants repeatedly noted the particular nature of

the facts giving rise to Plaintiff's conviction for murder) is, standing alone, sufficient to

distinguish the current case from *Graziano*.  In *Graziano*, the plaintiffs alleged that "there is

nothing unique or particularly telling about most of the facts and circumstances that these

decisions describe and are based on. . . . [T]he Board is denying parole . . . just because [the]

prisoner[s] committed murder and for no other reason."  *Graziano*, 2006 WL 2023082, at *6.

Here, Plaintiff has alleged facts indicating that Defendants *did* find that there was something

29

unique or telling about the facts and circumstances giving rise to Plaintiff's crime (i.e., again, the fact that, during the course of an attempted robbery, Plaintiff, without being under the influence of alcohol or drugs, stabbed a man 15 times, poured a half-gallon of cleaning solvent on his body, and then set him afire).  As a result, according to Plaintiff's Amended Complaint, Defendants denied Plaintiff parole not simply because he committed murder but (largely) because of the *way* he committed the murder *and what he did with the body afterward*–which actions Defendants characterized as "brutal[]," "[in] utter disregard for the life of another," "a significant escalation of your criminal behavior," "violent," "extreme[ly] serious[]," and a crime of such "sheer brutality . . . [as to be] breathtaking in scope."  (Dkt. No. 4, ¶¶ 33, 47, 62, 84 [Plf.'s Am. Compl.].)

Finally, to the extent that Plaintiff relies on *Graziano* for its statement "while there is no due process right to being granted parole, there is a due process right to have the decision made only in accordance with the statutory criteria" (Dkt. No. 36, Part 2, ¶ 15 [Plf.'s Mem. of Law in Opp. to Defs.' Cross-Motion]), two points deserve mentioning.  First, such a proposition (which implies that a convicted felon serving a sentence in New York has a federal due process right to have *all* New York-statutory factors considered during a parole-release decision) is dictum since it is unnecessary to the court's holding that the *policy* at issue was "arbitrary and capricious" in that it involved a failure to consider *any* statutory factors other than the violent nature of the offense.[58]  Second, in any event, the decision cites no authority for such a proposition.[59]

---

[58]      *See*, *e.g.*, *Graziano*, 2006 WL 2023082, at *1, 8, 9 ("Plaintiffs allege that since 1995, the 'Board of Parole has been issuing parole determinations pursuant to an unofficial policy of denying parole release to prisoners convicted of A-1 violent felony offenses, *solely* on the basis of the violent nature of such offenses and thus without proper consideration of *any* other relevant or statutorily mandated factor.' . . .   Plaintiffs . . . contend that 'the Board is not

This lack of authoritative support is not surprising since the proposition appears to be a significant departure from firmly established legal precedents from both the United States Supreme Court and the New York State Court of Appeals, as described above.  The proposition creates a distinction between what the decision calls "a due process right to being granted parole" and what it calls "a due process right to have the decision made only in accordance with the statutory criteria."  With respect, I do not perceive any such distinction.[60]  In my view, any federal due process right a convicted felon has to a parole decision made only in accordance with a state's statutory criteria exists only if he possesses a "protected liberty interest" in parole.[61]  If he possesses no such protected liberty interest, then he possesses only a *minimal* due process right with regard to that decision-making process (e.g., a right to have the decision made in a *non-arbitrary* way).[62]  And New York State's parole scheme (unlike the parole schemes of

---

exercising its discretion *at all*.' . . .  The allegation that there exists a policy or practice to deny parole based *solely* on the nature of the violent offense[] enables the Complaint in this case to transcend what all previous Court decisions have addressed . . . .") [internal record citations removed; emphasis added].

[59]     *See Graziano*, 2006 WL 2023082, at *6-9 (repeating this proposition several times but citing no case law supporting it, citing only *Barna v. Travis*, 239 F.3d 169 [2d Cir. 2001], which undermines such a proposition, and *King v. N.Y. State Div. of Parole*, 190 A.D.2d 423 [N.Y. App. Div., 1st Dept., 1993], which did not involve a due process claim).

[60]     Indeed, I note that the decision itself calls the distinction "theor[etical]." *Graziano*, 2006 WL 2023082, at *9.

[61]     *See, e.g., Greenholz*, 442 U.S. at 4, 5-9 (whether or not convicted felons possessed a "procedural due process" right in the manner in which their parole-release decisions were made by the Nebraska Board of Parole–other than the right to be free from arbitrary decision-making–depended on whether they had a "liberty interest" that was protected under the Fourteenth Amendment's Due Process Clause).

[62]     *See*, *supra*, cases cited in notes 53 and 54 of this Report-Recommendation; *see also Meachum v. Fano*, 427 U.S. 215, 226 (1976) (referring to the right to non-arbitrary decision-

various other states) creates no such protected liberty interest.[63]

Furthermore, by placing so much emphasis on New York statutory criteria, the *Graziano* decision demonstrates a lack of appreciation for the significance of the Supreme Court's decision in *Sandlin v. Conner*, 515 U.S. 472 (1995), which declared a shift in focus (in a due process analysis) from the *language* of a particular state law or regulation to the *nature of the deprivation at issue*, as discussed above.  Indeed, the Supreme Court in *Sandlin* specifically criticized the practice of, when determining the existence of a due process right, merely focusing on the existence of "mandatory" language in a state's parole statutes (e.g., language requiring release unless certain conditions exist), referring to such a practice as "mechanical."  *Sandlin*, 515 U.S. at 479 (referring to the Court's earlier decision in *Greenholz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1 [1979], which analyzed Nebraska's parole scheme, and stating, "The time has come to return to the due process principles . . . established [before the mandatory-discretionary dichotomy took hold].").

In the alternative, even assuming that Plaintiff has stated a due process claim, I recommend dismissal of that claim under a Rule 56 analysis.  Based on the current record, Plaintiff has failed to adduce any evidence in support of a claim that Defendants were acting "arbitrarily" or "capriciously" in denying his parole.[64]  For example, with respect to Plaintiff's

---

making as "minimum" procedures required by the Due Process Clause).

[63]    *See Davis*, 2007 WL 678331, at *1; *Marvin*, 255 F.3d at 44; *Barna*, 239 F.3d at 171; *Boothe*, 605 F.2d at 664.

[64]    (*Compare* Dkt. No. 30, Part 2, ¶¶ 20-59 [Defs.' Rule 7.1 Statement, containing factual assertions regarding precisely what occurred at each hearing, followed by accurate citations to record evidence] *with* Dkt. No. 36, Part 1, ¶¶ 20-59 [Plf.'s Rule 7.1 Response, admitting the vast majority of Defendants' factual assertions except a few of those assertions

claim that his due process rights were violated to the extent that Defendants based their four

decisions on Plaintiff's (allegedly) expunged and sealed driving convictions, to the extent that the

Second Circuit recognizes any such due process right, Plaintiff has adduced no evidence either

that (1) Defendants were *responsible* for the presence of that information in his parole file during

the first parole hearing or (2) a *likelihood* exists that, in reaching their subsequent three parole

decisions, Defendants actually relied on that information in a constitutionally significant

manner.[65]  *See Antonucci v. David*, 03-CV-0653, 2006 WL 2265028, at *4-6 (N.D.N.Y. Aug. 7,

2006) (Scullin, J.) (setting forth exact same analysis of similar due process challenge to parole

board decision).

> For all of these reasons, I recommend that Plaintiff's due process claim be dismissed.

### 2.   Plaintiff's Equal Protection Claim

> The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall

deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

XIV.  In other words, "[t]he Equal Protection Clause requires that the government treat all

similarly situated people alike."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d

Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 [1985]).

---

which Plaintiff denies or partially denies, e.g., in Paragraphs 42, 45, 48-53, 55, 59, which denials
are either immaterial to the due process issues at hand or are unsupported by specific citations to
record evidence].)

[65]     (*Compare* Dkt. No. 30, Part 2, ¶¶ 57-59 [Defs.' Rule 7.1 Statement, containing
factual assertions regarding precisely what occurred at each hearing, followed by accurate
citations to record evidence] *with* Dkt. No. 36, Part 1, ¶¶ 57-59 [Plf.'s Rule 7.1 Response,
admitting Defendants' factual assertions in Paragraphs 57 and 58, and denying factual assertions
in Paragraph 59, but citing no record evidence in support of that denial except Plaintiff's "Ex.
R," located at Dkt. No. 36, Part 4, which is simply a partial copy of N.Y. Exec. Law § 259-i].)

Liberally construed, Plaintiff's Amended Complaint, and his memorandum in opposition to Defendants' motion,[66] allege that, with respect to parole, he was treated differently than (2) non-violent felony offenders, or perhaps violent felony offenders who did not kill their victims in a particularly heinous manner (e.g., repeated stabbing followed by ignition of the body), and/or (2) convicted felons who do not have in their parole file sentencing minutes containing a recommendation regarding parole, or perhaps convicted felons who do have their sentencing minutes in their parole file but whose minutes do not contain a recommendation from the sentencing court.  (Dkt. No. 4, ¶¶ 89-95 [Plf.'s Am. Compl.]; Dkt. No. 36, Part 2, ¶¶ 38-43 [Plf.'s Mem. of Law in Opp. to Defs.' Motion].)

The problem is that, even if these allegations are true, Plaintiff has failed to state an equal protection claim because neither of those two classes of persons is a "protected class" for purposes of the Equal Protection Clause of the Fourteenth Amendment.  For example, several courts have specifically held that, for purposes of an equal protection analysis, (1) violent felony offenders are not actually "similarly situated" to non-violent offenders, and (2) in any event, discrimination against violent felony offenders in terms of parole release is "entirely appropriate."  *See Bottom v. Pataki*, 03-CV-0835, 2006 WL 2265408, at *6-7 & n.5 (N.D.N.Y. Aug. 7, 2006) (Scullin, J.), *accord*, *Larocco v. N.Y.S. Div. of Parole*, 05-CV-1602, 2006 WL 1313341, at *3 (N.D.N.Y. May 12, 2006) (McAvoy, J.), *Borcsok v. Pataki*, 05-CV-1542, 2006

---

[66]     When deciding a motion to dismiss for failure to state a claim, the court may, without converting the motion to dismiss into a motion for summary judgment, consider, *inter alia*, any documents provided by the plaintiff in opposition to defendants' motion, to the extent those documents are consistent with the allegations in the complaint.  *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 & n.41 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.) (citing cases).

WL 839545, at *2, n.2 (N.D.N.Y. March 29, 2006) (Sharpe, J.); *Parks v. Edwards*, 03-CV-5588,

2004 WL 377658, *4 (E.D.N.Y. Mar. 1, 2004).

In the alternative, even assuming that Plaintiff has stated an equal protection claim, I

recommend dismissal of that claim under a Rule 56 analysis.  Based on the current record,

Plaintiff has failed to adduce any evidence in support of such a claim.[67]

For all of these reasons, I recommend that Plaintiff's due process claim be dismissed.

### 3.     The Doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994)

Because I find that sufficient grounds exist upon which to base a dismissal of Plaintiff's

Amended Complaint, I need not, and do not, reach the merits of this alternative argument

advanced by Defendants.  (Dkt. No. 30, Part 8, at 5-8 [Defs.' Mem. of Law].)

### B.     Dismissal on Alternative Grounds

Under the "Three Strikes Rule" set forth in the federal statute governing *in forma*

*pauperis* proceedings,

> [i]n no event shall a prisoner bring a civil action . . . under this section
> if the prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of the
> United States that was dismissed on the grounds that it. . . fails to state
> a claim upon which relief may be granted, unless the prisoner is under
> imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The power of a federal district court to invoke this rule is not limited to the

---

[67]     (*Compare* Dkt. No. 30, Part 2, ¶¶ 60-61 [Defs.' Rule 7.1 Statement] *with* Dkt. No.
36, Part 1, ¶¶ 60-61 [Plf.'s Rule 7.1 Response, denying both of Defendants' factual assertions,
but citing only Plaintiff's Complaint generally, and Plaintiff's Exs. J, K, and L, found at Dkt. No.
36, Part 3, which consist of only (1) a Board of Parole appellate decision with regard to one of
Plaintiff's parole hearings, (2) a July 28, 2006, letter from Marco Ricci, an Agency Program Aide
at the Division of Parole, to Inmate Hector Pena-Martinez regarding Mr. Pena-Martinez's request
for early conditional parole for deportation, and (3) a January 4, 2005, letter from Plaintiff to
Defendant Tracy regarding his parole hearing scheduled for January 18, 2005].)

outset of a litigation but extends all throughout the pendency of the proceeding.  In other words,
specifically, federal district courts have the authority to rescind or revoke the *in forma pauperis*
status that it has previously bestowed upon a plaintiff, where it discovers that the status was
improvidently granted, even if the courts exercise that authority well into the pendency of the
proceedings.[68]

Here, I granted Plaintiff's request to proceed *in forma pauperis* on October 5, 2005.  (Dkt.
No. 5 at 3.)  However, when I granted this request, I was relying on (among other things)
Plaintiff's sworn allegation in his Amended Complaint that, as of August 16, 2005 (the date of
signing of the Amended Complaint), his "prior court proceedings" consisted of only ***three*** such
proceedings: (1) *Standley v. Wilcox*, 02-CV-6230 (S.D.N.Y.); (2) *Standley v. N.Y.S. Div. of
Parole*, Index No. 000149/04 (N.Y.S. Sup. Ct., Albany County); and (3) *Standley v. N.Y.S. Div.
of Parole*, Index No. 000971/05 (N.Y.S. Sup. Ct., Albany County).  (Dkt. No. 4, ¶¶ 15-21 [Plf.'s
Am. Compl.].)  This sworn assertion was not accurate.  As of August 16, 2005, Plaintiff had filed
at least ***sixteen*** actions or appeals in state or federal court (other than the current action), as
explained above in Part II.B. of this Report-Recommendation.  Even if Plaintiff had intended to
mean that he had previously filed only three *actions relating to his imprisonment*, his sworn
assertion would not have been accurate.  By August 16, 2005, Plaintiff had filed at least ***eleven***

---

[68]        *See Gill v. Pidlypchak*, 02-CV-1460, 2006 WL 3751340, at *5 (N.D.N.Y. Dec. 19,
2006) (Scullin, J., adopting Report-Recommendation by Treece, M.J.); *Polanco v. Burge*, 05-
CV-0651, 2006 WL 2806574, at *2 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting Report-
Recommendation by Homer, M.J.); *Demos v. John Doe*, 118 F. Supp.2d 172, 174 (D. Conn.
2000); *McFadden v. Parpan*, 16 F. Supp.2d 246, 247 (E.D.N.Y. 1998); *see also Rolle v. Nassau
County Correctional Facility*, 01-CV-2414, Order, at 2 (E.D.N.Y. filed Nov. 17, 2004) ("A court
may revoke the *in forma pauperis* status it previously bestowed upon a [plaintiff], where that
status is later determined to be 'improvident'") [citation omitted], *accord*, *Rolle v. Kurtzrock*, 03-
CV-1789 Order (E.D.N.Y. filed June 17, 2004).

such actions[69]–*twelve* if one counts the legal malpractice action he filed against his former

counsel on a criminal appeal.[70]

     Plaintiff's lack of candor was material in that, had I known of these other actions, I would

have reviewed the docket sheets of these matters, and learned of Plaintiff's considerable

litigation experience and his accumulation of strikes.  Specifically, as of the date of October 5,

2005 (the date on which I granted Plaintiff's request to proceed *in forma pauperis*), Plaintiff had

received at least ***three*** "strikes" for purposes of 28 U.S.C. § 1915(g).[71]  I note that I find nothing

on the face of the Amended Complaint indicating that Plaintiff is in "imminent danger of serious

physical injury."[72]

---

[69]    *See Standley v. Lazerson*, 91-CV-6078 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Artuz*, 93-CV-3528 (E.D.N.Y.) (habeas corpus action); *Standley v. Stewart*, 97-CV-6552 (S.D.N.Y.) (civil rights action); *Standley v. Lyder*, 99-CV-4711 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Wilcox*, 02-CV-6230 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Goord*, Index No. 002763/2000 (N.Y.S. Sup. Ct., Dutchess County) (Article 78 proceeding); *Standley v. Goord*, Index No. 000120/2001 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding); *Standley v. Parole*, Index No. 000149/2004 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding); *Standley v. Goord*, Index No. 002828/2004 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding); *Standley v. Parole*, Index No. 000971/2005 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding); *Standley v. Parole*, Index No. 001989/2006 (N.Y.S. Sup. Ct., Albany County) (Article 78 proceeding).

[70]    *See Standley v. Stewart*, Index No. 402210/1999 (N.Y.S. Sup. Ct., New York County).

[71]    *See Standley v. Stewart*, 97-CV-6552, Order of Dismissal (S.D.N.Y. filed Sept. 5, 1997) (dismissing prisoner civil rights action for failure to state a claim under Rule 12[b][6]); *Standley v. Lyder*, 99-CV-4711, 2001 WL 225035 (S.D.N.Y. March 7, 2001) (granting defendants' motion to dismiss Plaintiff's prisoner civil rights action for failure to state a claim under Rule 12[b][6]); *Standley v. Artuz*, No. 95-2755, Order of Dismissal (2d Cir. filed May 31, 1996) (habeas corpus action; docket sheet noting that, on 6/11/96, Plaintiff's was specifically informed that his "appeal was dismissed as frivolous").

[72]    28 U.S.C. § 1915(g); *see also Malik v. McGinnis*, 293 F.3d 559, 561 (2d Cir. 2002) (examining plaintiff's allegations in order to determine if plaintiff's case fell within the

As a result, I recommend that, in the alternative, the Court revoke Plaintiff's *in forma pauperis* status and dismiss Plaintiff's Amended Complaint without prejudice to refiling through a paid complaint.  I base this recommendation not only on the "three strikes rule" but on the Court's inherent ability to manage its docket through sanctioning abusive litigation practices such as making material misrepresentations or omissions to the Court.

### C.    Plaintiff's Motion for Summary Judgment

Because I have concluded that the Court should dismiss Plaintiff's Amended Complaint, I conclude that the Court should deny Plaintiff's motion for summary judgment as moot.

In the alternative, I conclude that the Court should deny Plaintiff's motion for summary judgment because that motion violates Local Rule 7.1 of the Local Rules of Practice for this Court by failing to provide a valid Statement of Material Facts as required.  Specifically, Plaintiff has failed to provide record citations in support of the factual assertions contained in his Rule 7.1 Statement, as Defendants point out.  (Dkt. No. 24, Part 2 [Plf.'s Rule 7.1 Statement]; Dkt. No. 30, Part 8, at 5 [Defs.' Mem. of Law].)  Plaintiff's response to this argument is that his failure to provide such record citations should not result in dismissal because (1) Plaintiff's failure was the result of his mistaken reliance on the Northern District's "*Pro Se* Handbook," which does not clearly state that such record citations were required, and (2) Plaintiff's failure should be excused in light of his special status as a *pro se* litigant.  (Dkt. No. 36, ¶¶ 41-45 [Plf.'s Reply].)

I reject Plaintiff's argument.  First, the version of the *Pro Se Handbook* on which Plaintiff allegedly relied in preparing his motion makes quite clear that the *Handbook* is only a guide, intended for use along with the Local Rules of Practice for this Court and the Federal Rules of

---

exception to the three strike's rule for prisoners in "imminent danger of serious physical injury").

38

Civil Procedure; and the *Handbook* also makes quite clear that Plaintiff should read and become familiar with all of Local Rule 7.1 before he begins writing a motion.[73]  As a result, it was far from reasonable for him to rely on one excerpt from the Manual in filing the dispositive motion at issue.  The unreasonableness of Plaintiff's reliance on an excerpt from the *Pro Se Handbook* is magnified by the fact that the law library at the New York State correctional facility in which Plaintiff was incarcerated when he prepared his motion had on file, along with a copy of the *Pro Se Handbook*, a copy of the Local Rules of Practice for the Northern District of New York, since the Clerk of the Court provides an updated copy of such Local Rules to all such institutions.

Second, the special leniency that is normally afforded to *pro se* civil rights litigants does not require that such litigants be excused from complying with Local Rule 7.1.[74]  In any event, as I explained above in Part II.B. of this Report-Recommendation, I have already found that the circumstances warrant revoking Plaintiff's special status as a *pro se* litigant for the remainder of this action.  As a result, he may not use the Court's special leniency to save his procedurally deficient motion for summary judgment.

Finally, even if I were to reach the merits of Plaintiff's motion, I would deny it for the reasons stated above in Part III.A. of this Report-Recommendation.  This is because the two main

---

[73]     *See*, *e.g.*, *Pro Se Handbook*: *The Manual for the Litigant Filing a Lawsuit Without Counsel*, at 1, 34 (U.S. Dist. Ct. N.D.N.Y. 2005) ("This handbook should not be considered the last word, nor should it be your only resource.  Rather, this handbook should be considered simply as a procedural aid in helping you file and litigate your lawsuit. . . .  Local Rule 7.1 sets forth the procedure for filing a motion in the Northern District; **motions must be filed in conformity with Local Rule 7.1 or else they will be denied**.  Please read and become familiar with all of Local Rule 7.1 before you begin writing a motion.").

[74]     *See Bussa*, 2004 WL 1637014, at *4 ("Proceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment.") [citations omitted], *accord*, *Durran*, 251 F. Supp. 2d at 1211 [citations omitted].

legal issues raised in Plaintiff's motion are also raised in Defendants' cross-motion which, again, I have addressed above. (*Compare* Dkt. No. 24, Part 4, ¶¶ 1-44 [Plf.'s Mem. of Law in Support of His Motion] *with* Dkt. No. 30, Part 8, at 9-21 [Defs.' Mem. of Law in Support of His Cross-Motion].)

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' cross-motion for summary judgment (Dkt. No. 30) be **GRANTED**; and it is further

**RECOMMENDED** that, in the alternative, Plaintiff's *in forma pauperis* status be revoked as having been improvidently granted due to Plaintiff's lack of candor with the Court, and that his Amended Complaint be **DISMISSED** without prejudice to refiling through a paid complaint; and it is further

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 24) be **DENIED** as moot, procedurally deficient, and/or without merit.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 30, 2007
        Syracuse, New York

George H. Lowe
United States Magistrate Judge